UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMANTHA GOTTLIEB,<br>    Plaintiff,<br><br>-against-<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | MEMORANDUM AND ORDER<br>Case No. 24-CV-7396 (FB) |

*Appearances:*
*For the Plaintiff:*
DANIEL ADAM OSBORN
Osborn Law, P.C.
43 West 43rd Street, Ste 131
New York, NY 10036

For the Defendants:
JOHN J. DURHAM
SIXTINA FERNANDEZ
US Attorney
Eastern District New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Plaintiff Samantha Gottlieb ("Gottlieb" or "Plaintiff") seeks review of the Commissioner of the Social Security Administration's ("the Commissioner" or "Defendant") denial of her application for Social Security Disability Insurance benefits under Title II, and Supplemental Security Income (SSI) payments under Title XVI of the Social Security Act. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

Gottlieb applied for Social Security Disability Insurance benefits on May 2, 2022, and applied for SSI on October 26, 2022, alleging disability as of March 24, 2022, due to anxiety, depression, post-traumatic stress disorder ("PTSD"), borderline personality disorder, and an injury to her right ankle. Tr. at 15, ECF No. 10.[1] An initial review denied her claims, and an administrative law judge ("ALJ") found Gottlieb not disabled in a decision dated March 14, 2024. *Id*. at 31. She requested review of the ALJ's decision, which the Appeals Council denied on August 26, 2024. *Id*. at 1. Thereafter, Gelman commenced this action pursuant to

---

[1] The Commissioner filed the administrative transcript of the proceedings before the Social Security Administration at ECF No. 10. All references to ECF No. 10 are denoted as "Tr. at __."

42 U.S.C. § 405(g) of the Social Security Act seeking review of the Commissioner's decision. Compl., ECF No. 1.

# I

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only if the factual findings are not supported by substantial evidence or if the decision is based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).[2]

The Commissioner employs a five-step inquiry to evaluate Social Security disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

steps one and two, the ALJ found that Gottlieb had not engaged in substantial gainful activity since the alleged onset date and has the following severe impairments: degenerative joint disease of the right ankle, status post total ankle replacement, obesity, depression, bipolar disorder, anxiety, borderline personality disorder, and PTSD. Tr. at 18.

At step three, the ALJ found that these impairments did not meet or equal the severity of the specified impairments in the Listing of Impairments, specifically Listings §§ 1.17, 1.18, 12.04, 12.06, 12.08, and 12.15. *Id*. Gottlieb's combination of impairments did not rise to the severity required by the Listings because, *inter alia*, they did not satisfy the "paragraph b" criteria, meaning they did not "result in one extreme limitation or two marked limitations in a broad area of functioning."[3] *Id.* at 19–20. The ALJ found that Gottlieb's impairments resulted in her experiencing a moderate limitation in several relevant areas, but no marked or extreme limitations. *Id.* at 20.

At step four, the ALJ found that Gottlieb had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." *Id.* Gottlieb's RFC included the following limitations: "she is limited

---

[3] The four "paragraph b" categories are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) adapting or managing oneself. 20 CFR Part 404 App. 1 of Subpart P at 105.

4

to occasionally climbing ramps and stairs, stooping, balancing, kneeling, and crouching; never climbing ladders, ropes, or scaffolds or crawling; avoiding all exposure to hazards (such as unprotected heights, moving mechanical parts, and uneven terrain); carrying out simple, routine tasks on a continuous basis with simple instructions and simple work-related decisions; no assembly line or production rate pace work; no work in tandem; occasional interaction with coworkers and supervisors; no constant interaction with the public in a customer service setting; tolerating occasional changes in the work setting and work processes; and standing and walking with a handheld assistive device (such as a single point cane)." *Id.*

The ALJ then found that Gottlieb was unable to perform any past relevant work. However, based on the testimony of a vocational expert, the ALJ determined that Gottlieb would be capable of performing jobs that exist in a significant number in the national economy, namely Sorter, Office and Router, Delivery. *Id.* at 17. Accordingly, the ALJ concluded that Gottlieb was not disabled. *Id.*

Plaintiff argues that the ALJ erred (1) by making an RFC determination not supported by substantial evidence and (2) by failing to properly evaluate the medical opinion evidence. Pl.'s Mem. at 15–18, ECF No. 11-1. On both points, Plaintiff takes issue only with the ALJ's findings vis a vis Gottlieb's mental disabilities. Because the Court agrees that the ALJ failed to properly weigh and

5

evaluate the medical opinion evidence, remand is appropriate pursuant to 42 U.S.C. § 405(g).

## II

ALJs must evaluate medical opinion evidence under the revised framework set out in 20 C.F.R. §§ 404.1520c and 416.920c. *See* Revisions to the Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Under these regulations, an ALJ will consider opinions from a claimant's medical sources but "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ "will articulate in [their] determination or decision how persuasive [he or she] find[s] all of the medical opinions" considering the regulatory factors. *Id.* §§ 404.1520c(b) and (c)(1)–(5), 416.920c(b) and (c)(1)–(5).

When weighing competing medical opinions, the Commissioner must consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The supportability and consistency factors are the "most important," and ALJs must explain how they considered those factors for medical opinions. *Id.* §§ 416.920a, 416.920c(b)(2). Supportability addresses the "extent to which a

6

medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation" while consistency speaks to the "extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Rev. to Rules, 82 Fed. Reg. 5844-01 at 5853.

In forming her decision, the ALJ considered four medical opinions regarding Gottlieb's mental health. Two were the opinions of psychiatrists Gottlieb visited for consultative examinations ("CEs") and two were made by agency consultants who reviewed Gottlieb's medical records. The first CE was conducted in January 2023 by Dr. Melissa Antiaris and the second was conducted in June 2023 by Dr. Danielle Hernandez. Tr. at 974, 1028. The consultant reports were generated in March 2023 by Dr. Juriga and July 2023 by Dr. Fassler. *Id*. at 66, 86. The ALJ also considered the fourteen months of appointment records and notes from Gottlieb's telehealth therapy and psychiatry provider, Cerebral. *Id*. at 24–29. Cerebral is an online mental health company that connects patients with therapy and psychiatry services via its telehealth platform. CEREBRAL, https://cerebral.com/about-cerebral (last visited Sept. 2, 2025).

After meeting with Gottlieb, Drs. Antiaris and Hernandez found that she was markedly limited in "her ability to regulate emotions, control behavior, and maintain well-being." Tr. at 978, 1032. Dr. Antiaris found that she had a moderate limitation in interacting with supervisors, co-workers, and the public while Dr.

7

Hernandez found that she had a marked limitation in this area. *Id*. Because the ALJ believed these findings were inconsistent with the rest of the record, she found the opinion of Dr. Antiaris only "somewhat persuasive," and found Dr. Hernandez's opinion "not persuasive." *Id*. at 26, 28.

    The agency reviewers, on the other hand, found that Gottlieb had only mild to moderate limitations. Tr. at 68, 89. The ALJ found these opinions to be "supported by and consistent with the claimant's conservative course of mental health treatment than began in late 2021 and ended in early 2023." *Id*. at 27. Because the agency reviewers did not meet with the Plaintiff, they relied on the CE reports as well as Gottlieb's therapy records from Cerebral**.** *Id*. at 67–70, 88–91. Although they came to different conclusions regarding the degree of the Plaintiff's limitations, they nonetheless found the CE reports to be reliable. *Id*. at 70, 91. Specifically, Dr. Juriga wrote that Dr. Antiaris' opinion was "generally supported by overall objective evidence," and Dr. Fassler noted that Dr. Hernandez' opinion was "consistent" with the evidence. *Id*. at 70, 91.

    Remand is appropriate where, as here, the ALJ fails to adequately address the supportability and consistency factors. *Rivera v. Comm'r of Soc. Sec.*, 2020 WL 8167136 at *14 (E.D.N.Y. Dec. 30, 2020). In the ALJ's decision, Dr. Antiaris's findings of marked limitations were brushed aside as "somewhat consistent with the evidence of record" while Dr. Hernandez's findings were similarly dismissed

8

"somewhat supported by her examination findings." Tr. at 26, 28. In support of these conclusory statements, the ALJ pointed to three pieces of evidence she found to undermine the persuasiveness of the CE reports: first, the Plaintiff was never hospitalized or forcibly institutionalized; second, her demeanor in psychiatric evaluations and Cerebral treatment showed she was "cooperative and [had] fair insight and judgement;" and third, the progress notes from Cerebral showed "almost entirely normal mental status exams." *Id*. at 26. Because these details do not reasonably relate to the supportability or consistency of the medical opinions contained in the CE reports, the ALJ's findings are not based on substantial evidence and remand is appropriate.

That Gottlieb was never hospitalized or institutionalized for her mental health condition is not necessarily indicative of whether she is disabled. It is possible for a claimant to suffer debilitating mental illness which does not rise to a level requiring hospitalization or institutionalization. "[A] lack of psychiatric hospitalizations does not equate to a lack of disability." *Yucekus v. Comm'r of Soc. Sec.*, 2024 WL 1348742, at *5 (E.D.N.Y. Mar. 29, 2024) "The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves and the absence thereof does not preclude a finding of

9

psychiatric disability." *Id.* (quoting *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015).

Gottlieb's appropriate and mature comportment at medical appointments should also not be construed to invalidate her claim. "It is possible for a [plaintiff] to appear normal at a medical appointment while suffering from serious mental illness." *Jorge D. v. Berryhill*, 2020 WL 1482625, at *8 (D. Vt. Mar. 27, 2020). This Circuit has previously noted that a patient's ability to attend counseling sessions, especially those where the goal is the alleviation of psychic distress, has "no bearing on [one's] ability to attend work." *Rucker*, 48 F.4th at 93. "Indeed, it would seem that a person suffering from [significant impairments] would have a strong interest in attending appointments and seeking relief." *Id.* (quoting *Virden v. Colvin*, No. 14-CV-1219, 2015 WL 5598810, at *11 (C.D. Ill. Sept. 22, 2015)). The same logic applies to a claimant's behavior at medical appointments. Gottlieb's "cooperative" demeanor at a 45-minute therapy appointment does not necessarily contradict the CEs' findings of limitations in her ability to manage her emotions, control her behavior, or maintain her wellbeing. "Unlike a physician's office, work is a different, more stressful environment for [Gottlieb] in which her psychiatric triggers are exacerbated by co-worker interaction and the need to respond appropriately to supervision." *Id.*

10

Finally, the ALJ's "cherry-pick[ing]" of the Cerebral mental status examinations is not evidence that reasonably undermines the supportability or consistency of the CE reports. *Rucker*, 48 F.4th at 94. During the roughly fourteen months that Gottlieb was a patient with Cerebral, she consistently received "normal" or "unremarkable" mental status examinations from her care providers. Tr. at 19, 24–29. At least a dozen times in the decision the ALJ points to the Plaintiff's "normal" mental status examinations as evidence contradicting the CEs' findings of Gottlieb's marked limitations. *Id.* Leaning on this emphasis, the decision almost entirely ignores Gottlieb's ongoing mental health crisis and the obvious decline in her quality of life. Over the course of the period in question, Gottlieb quit her job because of PTSD and anxiety symptoms and moved back home to live with her mother. *Id.* at 24. She consistently reported symptoms of depression, anxiety attacks, mania, difficulty sleeping, nightmares, dissociation, and daily crying spells. *Id.* She was prescribed at least seven different medications over this period to manage her symptoms with most either not working or having unmanageable side effects. *Id.* at 931–973, 986–1027. When a medication was finally found that improved her mania symptoms—the antipsychotic risperidone—her clinician noted that it was "the most happy I have seen her." *Id.* at 24. Nonetheless, by her next appointment Gottlieb was made to abandon this course of

treatment because of the drug's dangerous interactions with her pain medication. *Id*.

Despite including these troubling facts in the narrative discussion of Gottlieb's medical history, the only information the ALJ included when weighing the persuasive value of the medical opinions is that the Cerebral staff repeatedly gave Gottlieb mental status reports "within normal limits." *Id*. Each of Gottlieb's appointment records with Cerebral included a section of detailed, personalized notes from the session, which are followed by a formal, completely impersonal "Mental Status Exam" where the patient's appearance, mood, affect, behavior, thought process, etc. are briefly described. Each of these exams features almost the exact same brief and vague summary of Gottlieb's mental state.[4] For example, at her June 7, 2022 appointment, the therapist noted that Gottlieb reported her depression was overwhelming, she was crying every day, and she was extremely anxious, her mental status exam reported her mood as "good - appropriate," her affect as "appropriate and mood congruent," and her behavior as "calm,

---

[4] On November 1, 2024, the company entered into a non-prosecution agreement ("NPA") with the U.S. Attorney's Office, Eastern District of New York. Cerebral agreed to pay a fine and submit to 30-months of oversight after accepting responsibility for potential violations of federal law, specifically attempted distribution of controlled substances, in violation of 21 U.S.C. §§ 841 and 846, between 2019 and 2022. Non-Prosecution Agreement between the U.S. Department of Justice and Cerebral Inc,. (Nov. 1, 2024), https://www.justice.gov/usao-edny/pr/telehealth-company-cerebral-agrees-pay-over-36-million-connection-business-practices. Although the NPA revolved around the company's policy of overprescribing ADHD stimulant medications—which is not at issue in Gottlieb' case—the Court takes note of the fact that Gottlieb was receiving care from the company at the same time as covered by the NPA, and this knowledge colors the Court's interpretation of these "Mental Health Exams."

12

cooperative, and appropriate." *Id*. at 968–970. On October 7, 2022, the Cerebral therapist noted that Gottlieb said she had recently been so manic that she could not sleep, and that her boyfriend had insisted she make the visit because of her mania. *Id*. at 1021. Nonetheless her mental status exam *again* reported her mood as "good - appropriate," her affect as "appropriate and mood congruent," and her behavior as "calm, cooperative, and appropriate." *Id*. at 1023. And finally, at the October 27, 2022, appointment when the Risperdal was working and the clinician said she was "the most happy I have seen her," her mental status exam *once again* stated mood as "good - appropriate," her affect as "appropriate and mood congruent," and her behavior as "calm, cooperative, and appropriate." *Id*. at 1015–16. In short, no matter what happened to Gottlieb each week, her mental status report was almost exactly the same.[5]

While it is possible that the disconnect between Gottlieb's reported psychiatric symptoms and her mental status exams raised questions about her reliability, the ALJ made no such finding. There is no evidence in the record that supports discounting Gottlieb's reported mental condition—as well as her physicians' detailed appointment notes—in favor of a transparently formulaic and

---

[5] The ALJ did find the one instance of the Mental Status Exam featuring a unique answer, from April 2022 when the examiner reported Gottlieb's mood as "anxious depressed," but this single exception doesn't undermine the strong suggestion that these "exams" were formulaic and nearly automated. Tr. at 24, 1231.

13

standardized examination. The ALJ evidently lent more weight to these mental status exams because they were more "objective" than her personal reports. For example, the ALJ's decision observes the following disjunction: "During June 2022, the claimant *said* her depression was very bad with daily crying and that she was extremely anxious. She endorsed rapid cycling highs and lows. *Nevertheless, mental status examination was entirely within normal limits*." Tr. at 24 (emphasis added). This prioritizing of objective observations over subjective reports flies in the face of this Circuit's holding that "psychiatric testing is inherently based on subjective reports" because mental health is "less susceptible to objective testing and assessment." *Rucker*, 48 F.4th 86 at 92; see *Sylvester v. Comm'r of Soc. Sec.*, 692 F. Supp. 3d 46, 53 (E.D.N.Y. 2023) ("[T]he Second Circuit has found error when an ALJ devalues a treating physician's opinion based on its consideration of subjective patient reports").

    The ALJ failed to consider substantial evidence by discounting the value of the opinions of Drs. Antiaris and Hernandez based on Gottlieb's "unremarkable mental status examination findings." The ALJ instead opted to give persuasive weight to the opinions of agency reviewers Drs. Juriga and Fassler. While the treating-physician rule has been abrogated by the Commissioner's 2017 regulations, it is still true that a physician who directly examines a patient has valuable insight into the patient's condition. *Kelly v. Comm'r of Soc. Sec.,* 2024 WL

14

5120051, at *11 (E.D.N.Y. Dec. 16, 2024) ("[C]ourts in this district have held the factors under the new regulations are very similar to the analysis under the old treating physician rule"). And "in cases where mental health is the most limiting disability, it is generally improper to rely on the opinion of a non-treating, non-examining doctor[,] because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient." *Armstead v. Comm'r of Soc. Sec.*, 2024 WL 5077582, at *15 (E.D.N.Y. Dec. 11, 2024) (collecting cases). This is reinforced by the fact that both Drs. Juriga and Fassler reported finding the opinions of Drs. Hernandez and Antiaris supported and consistent with the Plaintiff's medical record.

### III.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner with or without remanding the cause for a rehearing." *Butts v. Burnhart*, 388 F.3d 377, 385 (2d Cir. 2004). "Remand is appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would ... plainly help to assure the proper disposition of [a] claim." *McGregor v. Astrue*, 993 F. Supp. 2d 130, 145 (N.D.N.Y. 2012). In contrast, where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," a remand for calculation of benefits, as opposed to further fact

15

gathering, is appropriate. *Butts*, 388 F.3d at 385-86; *Torres v. Colvin*, No. 3:16-cv-00809(JAM), 2017 WL 1734020, at *3 (D. Conn. May 3, 2017) ("Where the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose, the Court may reverse and remand solely for calculation and payment of benefits.").

The psychiatrists who actually evaluated Gottlieb found that she was markedly limited in more than one "paragraph b" categories, meaning that she could have been found disabled at step three of the ALJ's evaluation. 20 C.F.R. §§ 404.1520(d), 416.920(d). Despite these opinions, the ALJ found that Gottlieb did not support her step three burden. Rather than crediting Gottlieb's providers' personal notes, or the opinions of the psychiatrists who examined her in-person, the ALJ instead credited the agency consultants and the suspect Cerebral "mental status exams." The ALJ's failure to properly weigh the expert opinions leads the Court to find that "no reasonable factfinder could have reached the same conclusion as the ALJ," and remand is therefore appropriate. *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

Because the record is fully developed, further deliberations on the merits are not needed. *See Sublette v. Astrue*, 856 F. Supp. 2d 614, 619 (W.D.N.Y. 2012) (remanding for calculation of benefits where medical provider opinions, properly weighed, clearly justified finding of disability). Therefore, "[t]he present case

16

would be an appropriate one in which to carry out Congress' mandate to foreshorten the often painfully slow process by which disability determinations are made." *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 644 (2d Cir. 1983). Gottlieb has waited for more than three years for her claim to be recognized and remand would only serve to drag her along for countless more years. "[R]emand solely for a calculation of benefits is warranted and, as an added virtue, will serve a quietus to this already too protracted litigation." *Garcia v. Comm'r of Soc. Sec.*, 496 F. Supp. 2d 235, 243 (E.D.N.Y. 2007).

## Conclusion

The Commissioner's motion is DENIED and Gottlieb's motion is GRANTED. The case is remanded to the Commissioner to calculate benefits as of the dates of Gottlieb's initial applications for benefits.

**SO ORDERD**

\_\_/S/ Frederic Block_____  
FREDERIC BLOCK  
Senior United States District Judge

Brooklyn, New York  
September 2, 2025